United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 6, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-51470

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOE ANTHONY MOLINA

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Joe Anthony Molina pleaded guilty to two counts of possession with intent to distribute controlled substances, one count of conspiracy to possess with intent to distribute a controlled substance, one count of conspiracy to possess a firearm in furtherance of a drug-trafficking crime, and one count of possession of firearms in furtherance of a drug-trafficking crime. He appeals his convictions, contending that his pleas of guilty were involuntary because the district court incorrectly advised him regarding the maximum imprisonment as to one of the counts. He also appeals his sentence, arguing that the district court improperly calculated his base offense level

under the United States Sentencing Guidelines and that the court improperly applied a two-level enhancement for the use of a minor.  For the reasons that follow, we AFFIRM his convictions, VACATE his sentence, and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a search warrant, officers with the Austin Police Department conducted a search of defendant-appellant Joe Anthony Molina's Austin, Texas, residence on September 2, 2004. The search revealed evidence of a large marijuana growing operation.  The officers also found and seized, inter alia, 21.81 kilograms of marijuana, 414.39 grams of methamphetamine, 28.36 grams of Psilocin (mushrooms), and several firearms.  An analysis of the seized methamphetamine revealed that it contained 310.79 grams of actual (i.e., pure) methamphetamine and was thus of approximately 75% purity.

The grand jury charged Molina, along with two co-conspirators, in a six-count indictment on October 5, 2004. Molina was not charged in count one; he pleaded guilty to counts two through five.  On count two, Molina pleaded guilty to possession with intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  On count three, he pleaded guilty to possession with intent to distribute less than 50 pounds of marijuana, also in violation of § 841(a)(1).  On count four, he pleaded guilty to conspiracy to

possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846. On count five, Molina pleaded guilty to conspiracy to use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a drug-trafficking crime in violation of 18 U.S.C. § 924(c), (n). And on count six, he pleaded guilty to using, carrying, and possessing firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Before Molina pleaded guilty, the district court admonished him, inter alia, that the maximum sentence of imprisonment for count three (possession with intent to distribute less than 50 pounds of marijuana) was twenty years.

The Presentence Investigation Report ("PSR"), ordered by the district court, applied the 2004 version of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and assigned Molina a base offense level of 34, based on the amount of drugs seized at the residence and distributed by the conspiracy. Because more than one drug was involved, the PSR converted the weight of each drug to its marijuana equivalent, pursuant to U.S.S.G. § 2D1.1 cmt. n.10. In calculating the marijuana equivalent of the methamphetamine seized, the PSR converted the weight of actual methamphetamine in the substances (310.79 grams), using the harsher multiplier for actual methamphetamine, rather than converting the weight of the total substances (414.39 grams).

The PSR also recommended (1) a three-level enhancement, pursuant to U.S.S.G. § 3B1.1(b), for Molina's role as manager or supervisor in a criminal activity involving five or more participants; (2) a two-level enhancement, pursuant to U.S.S.G. § 3B1.4, for the use of a minor in the commission of the offense; and (3) a three-level reduction, pursuant to U.S.S.G. § 3E1.1, for Molina's acceptance of responsibility. The PSR thus arrived at a total offense level of 36. It also assigned Molina a criminal-history category of IV.

Molina objected to the use of 310.79 grams of actual methamphetamine in the Guidelines calculation. He also objected to both enhancements. The district court overruled Molina's objections and adopted the PSR in its entirety.

The district court imposed a sentence of 262 months' imprisonment on count two, 240 months' imprisonment on count three, 262 months' imprisonment on count four, and 240 months' imprisonment on count five, to be served concurrently. Additionally, the court sentenced Molina to 60 months' imprisonment on count six, to be served consecutively, for a total of 322 months' imprisonment.[1] Molina timely appealed his convictions and his sentence.

## II. MOLINA'S CONVICTIONS

Molina first contends that his guilty pleas on all counts

---

[1] The sentence also included five years of supervised release and a $500 special assessment.

-4-

were involuntary because the district court incorrectly admonished him that the maximum sentence of imprisonment for count three was twenty years, when in reality it was five.

## A. Standard of Review

Because Molina did not object before the district court, we review for plain error. See United States v. Vonn, 535 U.S. 55, 58-59 (2002). Under the plain-error standard, we may reverse only if (1) there is error, (2) the error is clear under current law, and (3) the error affects the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993); United States v. Garcia Abrego, 141 F.3d 142, 165 (5th Cir. 1998) (quoting United States v. Dupre, 117 F.3d 810, 817 (5th Cir. 1997)). Molina bears the burden of persuasion with respect to this showing. United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004). He must "show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 83.

## B. Discussion

Prior to accepting Molina's plea of guilty, the district court was required to inform him of the maximum possible penalty. See FED. R. CRIM. P. 11(b)(1)(H). The district court advised Molina that the maximum period of imprisonment for count three (possession with intent to distribute less than 50 pounds of marijuana) was twenty years. Both Molina and the government agree that this admonition was plain error because the maximum

imprisonment for count three is actually five years.  See 21

U.S.C. § 841(b)(1)(D).[2]  But they disagree as to whether Molina's

convictions must be set aside.

Molina contends that his convictions on all counts must be

vacated because the incorrect admonishment rendered his guilty

pleas involuntary.  He posits that "[i]t could well be" that he

pleaded guilty because he believed that the easiest case for the

government to prove was on count three since, "[a]fter all, 48

pounds of marijuana are much harder to hide than 414 grams of

methamphetamine."  Def.-Appellant's Br. 8.  He opines (1) that

the main evidence that led the police to him was the presence of

marijuana, (2) that the police consistently developed more

evidence as to the marijuana possession before the search warrant

was executed, and (3) that he and his co-defendants were targeted

because of obvious signs of a large marijuana growing operation.

Based on this, Molina suggests that he "could well have concluded

that a marijuana trial was too risky" if he faced twenty years'

imprisonment, whereas he might have risked a trial had he known

that he faced only five years' imprisonment on count three.  Id.

Molina has not demonstrated a reasonable probability that he

---

[2] Section 841(b)(1)(D) provides that the maximum
imprisonment for possessing less than 50 kilograms of marijuana
is five years.  Although Molina was convicted of possessing less
than 50 pounds of marijuana, § 841(b)(1)(D) governs his sentence
because 50 pounds is approximately 22.7 kilograms.  See U.S.S.G.
§ 2D1.1 cmt. n.10 Measurement Conversion Table ("1 lb = 0.4536
kg").

would not have pleaded guilty but for the improper admonition. Count three was only one of several counts to which Molina pleaded guilty, even though he was correctly admonished that three of the counts carried a maximum term of life imprisonment. Moreover, he does not direct this court to any portion of the record supporting the proposition that the maximum sentence for count three affected his plea decision. Because Molina has not satisfied his burden, we affirm his conviction on count three. We affirm his convictions on the remaining counts as well because the district court's admonishment as to those individual counts satisfied Rule 11's requirements. Cf. United States v. Still, 102 F.3d 118, 122-23 (5th Cir. 1996) (vacating sentence on count one because of Rule 11 error but affirming sentence on count two because Rule 11 was satisfied as to that individual count).

### III. MOLINA'S SENTENCE

Molina argues that his sentence should be vacated because the district court erred (1) in applying the Guidelines multiplier for actual methamphetamine instead of that for a methamphetamine mixture or substance; (2) in applying a sentencing enhancement for the use of a minor; and (3) in considering sentencing factors not admitted by him, depriving him of his Sixth Amendment rights.[3]

---

[3] Molina additionally maintains that his sentence of 240 months' imprisonment on count three should be vacated because it exceeded the statutory maximum of five years' imprisonment. The government concedes that the sentence for count three should be

## A. Standard of Review

We review the district court's factual findings for clear error and its interpretation and application of the Guidelines de novo. United States v. Angeles-Mendoza, 407 F.3d 742, 746-47 (5th Cir. 2005). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." United States v. Holmes, 406 F.3d 337, 363 (5th Cir.) (quoting United States v. Powers, 168 F.3d 741, 752 (5th Cir. 1999)), cert. denied, 126 S. Ct. 375 (2005).

## B. Use of Actual Methamphetamine in Guidelines Calculation

Molina argues that the district court erred when it calculated the marijuana equivalent of the methamphetamine seized by applying the multiplier for actual methamphetamine instead of that for a methamphetamine mixture or substance. Section 2D1.1's Drug Equivalency Table for Schedule I and II stimulants provides that one gram of a mixture or substance containing methamphetamine is equivalent to two kilograms of marijuana, whereas one gram of actual methamphetamine is equivalent to twenty kilograms of marijuana. U.S.S.G. § 2D1.1 cmt. n.10 Drug Equivalency Tables. Molina contends that this ten-to-one ratio violates due process because it is irrational and because its

_____

vacated on this basis. We do not address this argument specifically since we conclude that Molina's overall sentence must be vacated. On remand, however, the district court may reconsider Molina's sentence as to count three in light of 21 U.S.C. § 841(b)(1)(D).

application is arbitrary.

Molina first posits that the ratio is irrational because, "[u]nlike the notorious difference between cocaine and crack cocaine, there is no qualitative difference involved here." Def.-Appellant's Br. 11-12 (footnote omitted). The Seventh Circuit rejected this argument in United States v. Turner, 93 F.3d 276 (7th Cir. 1996):

> We agree with the district court that the 10:1 ratio is supported by a rational basis because the pure product is more concentrated and can be cut into larger quantities for resale. Methamphetamine, as it is produced through normal chemical processes, contains a number of impurities that can be removed through further processing. The finished product can be cut into larger quantities for resale. Accordingly, the sentencing scheme for methamphetamine punishes more severely the sophisticated cooks who could otherwise manipulate the Guidelines by producing smaller quantities of more concentrated methamphetamine. We are unable to conclude that Congress lacked a rational basis when it elected to punish drug offenses involving pure methamphetamine more severely.

Turner, 93 F.3d at 287 (citations and quotation marks omitted). Molina has not directed us to authority contrary to Turner; moreover, we agree with Turner's rationale. Accordingly, we reject Molina's argument that the ten-to-one ratio has no rational basis.

Molina also argues that the application of the ten-to-one ratio is arbitrary. He opines that the decision whether to use the actual-methamphetamine multiplier or the methamphetamine-

-9-

mixture multiplier in the Guidelines calculation is determined by the indictment.  In essence, he suggests that if the government chooses to present an indictment alleging possession of methamphetamine, then the harsher actual-methamphetamine multiplier is used in the Guidelines calculation; but if the government chooses to present an indictment alleging possession of a mixture or substance containing methamphetamine, then the more-lenient methamphetamine-mixture multiplier is used, resulting in a shorter sentence for the exact same conduct.[4] Because the harshness of the sentence, he suggests, is therefore within the government's discretion, the application of the ten-to-one ratio is arbitrary.

Molina misapprehends the operation of the Guidelines.  The choice of which multiplier to use is not determined by the language of the indictment.  Rather, commentary to § 2D1.1 provides: "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."  § 2D1.1(c) n.B.  Thus, even if the

---

[4] Molina suggests that, in his case, had the indictment alleged possession of a mixture or substance containing methamphetamine, then the court would have used the more-lenient multiplier for a methamphetamine mixture or substance rather than for actual methamphetamine in determining the marijuana equivalent.  This would have resulted in a base offense level of 30 rather than 34 for the exact same conduct solely because of different language in the indictment.

-10-

indictment alleges possession of a mixture or substance containing methamphetamine, the Guidelines' commentary directs the court to apply the offense level determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level.  Because the choice of multiplier is determined by the Guidelines and not by the government or the language of the indictment, we reject Molina's contention that the application of the ten-to-one ratio is arbitrary.  See Turner, 93 F.3d at 287.

**C. Enhancement for Use of a Minor**

Molina next asserts that the district court erred in applying a sentencing enhancement for the use of a minor, his seventeen-year-old girlfriend.  He posits that, although there is evidence that his girlfriend was present for and knew of some of his drug trafficking, her presence and knowledge is not sufficient to constitute use of a minor.  We agree.

U.S.S.G. § 3B1.4 provides for a two-level enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense."  Commentary to § 3B1.4 states: "'Used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."  § 3B1.4 cmt. n.1.

The government contends that the enhancement was proper

-11-

because Molina's minor girlfriend admitted some knowledge of the drug business and admitted that she went on some of the drug runs to Corpus Christi. The government opines that Molina used his girlfriend to either drive him to the marijuana pickups or to evade suspicion by law enforcement, or both, "as there is no other plausible explanation for taking her on those trips." Gov't Br. 35.

A number of cases have upheld sentencing enhancements for the use of a minor when the minor is present during some portion of the commission of the offense. But in each of these cases there is an additional circumstance, beyond the minor's mere presence, demonstrating that the defendant used or attempted to use the minor. For example, courts have upheld the enhancement where (1) the minor participated in loading or unloading contraband into or from a vehicle, see United States v. Ghali, 184 F. App'x 391, 397 (5th Cir.) (unpublished opinion), cert. denied, No. 06-6708, 2006 WL 2736597 (Oct. 30, 2006); United States v. Rivera, 248 F.3d 677, 682 (7th Cir. 2001); (2) the defendant brought the minor along so that the minor could drive the defendant's car, see United States v. Gaskin, 364 F.3d 438, 464-65 (2d Cir. 2004); (3) the defendant brought the minor along for moral support because the defendant otherwise could not have committed the offense, see United States v. Paine, 407 F.3d 958, 965 (8th Cir. 2005); and (4) the defendant brought minor children on a drug run to avoid detection by law enforcement, see United

-12-

States v. Gutierrez, No. 00-40394, 251 F.3d 156, 2001 WL 300644, at *1 (5th Cir. 2001) (per curiam) (unpublished table decision).

In this case, there is no evidence of anything more than Molina's girlfriend's presence while unlawful activity occurred. The PSR indicates that Molina's minor girlfriend and her child were present at Molina's residence when the search warrant was executed, that Molina's girlfriend knew about the presence of drugs and certain aspects of the drug operation, that she went with Molina a couple of times to pick up marijuana, and that one of the co-conspirators drove her back and forth to Corpus Christi. But there is no evidence, for example, that Molina's girlfriend assisted in carrying or loading drugs, that she ever drove Molina or his co-conspirators on the drug runs, that Molina or the co-conspirators needed moral support, that Molina believed that his seventeen-year-old girlfriend's presence in the vehicle during a drug run would assist in avoiding detection, or that Molina ever asked or encouraged his girlfriend to assist or become involved in the drug operation in any way. Moreover, contrary to the government's assertion that there is no other plausible explanation for her presence on the trips between Austin and Corpus Christi, the PSR indicates that Molina's girlfriend lived in Corpus Christi.[5] It is just as logical an

_____

[5] The PSR states that Molina's girlfriend "resides in Corpus Christi," raising the possibility that she lived there at the time the PSR was prepared but not at the time of the underlying events. But the PSR also states that Molina's coconspirator

-13-

inference, if not more so, that Molina's girlfriend used Molina and his co-conspirators to transport her between her residence in Corpus Christi and Molina's residence in Austin.

Because nothing in the record indicates more than Molina's girlfriend's presence, we conclude that the district court clearly erred in finding that Molina used a minor in the commission of the offense.  See United States v. Jimenez, 300 F.3d 1166, 1170 (9th Cir. 2002) ("Absent other evidence, the 'mere presence of a minor' is insufficient to support the application of § 3B1.4." (quoting United States v. Castro-Hernandez, 258 F.3d 1057, 1060 (9th Cir. 2001))); see also United States v. Alarcon, 261 F.3d 416, 422 (5th Cir. 2001) (concluding that mere presence of children in vehicle was insufficient to show use, absent evidence that defendant "made, wanted, or suggested" that minor children ride in vehicle to avoid detection).[6]  Accordingly, we vacate Molina's sentence.

**D. Use of Facts Not Admitted by Molina**

---

"drove Molina to Corpus Christi to visit his girlfriend," indicating that the girlfriend lived in Corpus Christi during the time of the underlying events.

    [6] We recognize that Alarcon is not controlling because the panel in that case was considering whether there was sufficient evidence to support a conviction for the use of a minor in avoiding detection of an offense, in violation of 21 U.S.C. § 861(a)(2).  See Alarcon, 261 F.3d at 422.  Of course, our review for sufficiency of the evidence with regard to a criminal conviction is different since a conviction requires proof beyond a reasonable doubt, whereas a sentencing finding requires a preponderance of the evidence.  We nonetheless find Alarcon instructive as to what conduct constitutes use of a minor.

Molina finally contends that his Sixth Amendment rights were violated by the district court's consideration of relevant conduct that was neither proven beyond a reasonable doubt nor admitted by him. Molina concedes that this argument is foreclosed by United States v. Alonzo, 435 F.3d 551, 553 (5th Cir. 2006) ("[United States v.] Booker[,] [543 U.S. 220 (2005),] contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing." (quoting United States v. Mares, 402 F.3d 511, 519 (5th Cir.), cert denied, 126 S. Ct. 43 (2005))). Molina presents this argument solely to preserve it for appeal to the Supreme Court if necessary. Alonzo is binding on us, absent a contrary decision of the Supreme Court or en banc reconsideration of the issue. See United States v. Stone, 306 F.3d 241, 243 (5th Cir. 2002). Accordingly, Molina's argument is without merit.

## IV. CONCLUSION

For the foregoing reasons, Molina's convictions are AFFIRMED, his sentence is VACATED, and the case is REMANDED to the district court for further proceedings.