IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-41767

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BOBBIE RAY McKINLEY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
No. 5:06-CR-1087-ALL

Before SMITH and PRADO, Circuit Judges, and LUDLUM, District Judge.[*]

PER CURIAM:[**]

Bobbie McKinley appeals the sentence imposed following his guilty plea

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to transporting an illegal alien inside the United States. He contends the district court erred by adjusting his offense level for recklessly creating a substantial risk of death or serious bodily injury, pursuant to U.S.S.G. § 2L1.1(b)(6).[1] We vacate the sentence and remand for resentencing.

The court based the adjustment on the placement of four illegal aliens in the sleeper compartment of McKinley's tractor/trailer. One of the four was found in a small compartment in the vehicleSSa closet behind the driver where a freezer typically is placed. The other three were found beneath a mattress. McKinley argued that all four were underneath the mattress while he was driving and that the alien in the closet must have put himself there to evade capture after McKinley had left the vehicle at a checkpoint.

At the sentencing hearing, the government conceded that there was no specific contradictory evidence, and the district courtSSthough expressing some skepticism regarding McKinley's accountSSdid not decide as a factual matter when the alien had entered the closet, instead adjusting the offense level based on the assumption that all four were beneath the mattress; the court ruled that such placement alone constituted reckless endangerment.[2] We consequently do not address whether § 2L1.1(b)(6) would have been satisfied if the court had been convinced, as a factual matter, that the alien was actually transported in that small closet.

"We review a district court's interpretation of the guidelines de novo and its factual determinations for clear error." United States v. Solis-Garcia, 420

---

[1] "If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18." U.S.S.G. § 2L1.1(b)(6).

[2] Specifically, the district court stated at the hearing that "even if [McKinley was] correct as to the individual found in that closet compartment [and] that all four individuals were under that mattress from the beginning of this trip . . . when you have four people cramped up under a mattress that . . . can result in suffocation and therefore is reckless endangerment."

F.3d 511, 514 (5th Cir. 2005). A factual finding is clearly erroneous only if the court, after reviewing the record, "is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal citations and quotations omitted). There are limits to this deference. See, e.g., United States v. Leal, 74 F.3d 600, 608 n.1 (5th Cir. 1996).

In McKinley's tractor/trailer, the sleeper compartment was not partitioned from the driver, was air-conditioned, and had doors at either end. At the sentencing hearing, McKinley testified that the mattress weighed only 10-15 pounds, and that evidence was not rebutted. The court nonetheless characterized the mattress as "king-size" and ruled that there was danger of suffocation because the aliens might have been reluctant to lift the mattress for fear of discovery, and the initial stages of suffocation caused by such a fear-induced delay might have weakened their bodies such that they would have been unable to remove the mattress to prevent death.[3]

Though not discounting the legitimacy of the district court's concern generally, we do not think it is applicable here. A 15-pound mattress does not "creat[e] a substantial risk of death or serious bodily injury," § 2L1.1(b)(6) (emphasis added), to four adult men. If there is evidence that the mattress was significantly heavier, perhaps that could constitute a sufficiently "substantial risk," but no such evidence was presented, and the pictures of the mattress in the presentence report support McKinley's testimony.

In United States v. Zuniga-Amezquita, 468 F.3d 886, 889 (5th Cir. 2006). we held that in assessing dangerousness under § 2L1.1(b)(6), five non-exhaustive factors should be considered: "the availability of oxygen, exposure to tempera-

---

[3] The district court likened the mattress to a plastic bag, which a person normally is strong enough to remove from his head, but after having the bag on his head for a while, he can no longer remove it.

ture extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs." "The risk must . . . be greater than that of an ordinary passenger not wearing a seatbelt in a moving vehicle." Id. at 890.

On the evidence presented, there were no extreme temperatures, the aliens could communicate freely with McKinley, there were doors for relatively easy escape, there was normal airflow, and it was not more dangerous to lie in the sleeper compartment than it would have been to travel without a seatbelt. The aliens thus faced no more risks than those faced by the aliens in Solis-Garcia, in which we held that § 2L1.1(b)(6) was inapt.

The judgment of sentence is VACATED AND REMANDED for resentencing.