# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 14, 2010

Lyle W. Cayce
Clerk

No. 09-41092

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARIA CECILIA MATA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:

Maria Cecilia Mata appeals the forty-five-month sentence imposed following her plea of guilty to a charge of transporting an undocumented alien for financial gain in violation of 8 U.S.C. § 1324. Mata contends that the district court committed error by enhancing her sentence pursuant to U.S.S.G. §§ 2L1.1(b)(6) & 3B1.4. She also contends that the district court committed plain error by delegating to the probation officer the authority to determine whether Mata would be required to participate in mental-health treatment as a special condition of her supervised release. We conclude that both contentions are without merit and affirm Mata's sentence.

No. 09-41092

I.

At approximately 8:25 p.m. on May 27, 2009, Border Patrol agents stopped a 2001 Ford Escape at the Interstate-35 checkpoint twenty-nine miles north of Laredo, Texas. A Ford Escape seats five. Six people were in the car. Mata was driving, her sixteen-year-old son was in the front seat, and seated in the back were a friend of Mata's who was over the age of eighteen, her friend's minor daughter, and Mata's six-year-old daughter. In the cargo area behind the back seat, underneath a pile of blankets, luggage, and a stroller, was a Mexican National named Edgar Guerrero-Cruz. Border Patrol agents discovered Guerrero-Cruz while inspecting the vehicle at the checkpoint. The agents arrested Mata, who admitted to them that she was being paid to drive Guerrero-Cruz, who she knew was illegally present in the United States, from Laredo to San Antonio. Mata was charged in a one-count indictment with transporting an undocumented alien for financial gain by means of a motor vehicle under 8 U.S.C. § 1324. She pleaded guilty without a plea agreement.

At issue in this appeal are two sentence enhancements that the probation officer applied after calculating Mata's base offense level as twelve under the United States Sentencing Guidelines.[1] First, the probation officer enhanced Mata's offense level to eighteen on the ground that Mata's "offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."[2] Second, Mata received a two-level enhancement because the probation officer found that Mata "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense."[3] Mata also received a two-level reduction for acceptance of responsibility, so her final offense level was eighteen.

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.1(a)(3) (2009).

[2] *See id.* § 2L1.1(b)(6).

[3] *See id.* § 3B1.4.

Mata objected to both enhancements at her sentencing hearing. The district court overruled her objections, adopted the presentence report, and sentenced Mata to a forty-five-month term of confinement.

The district court also placed Mata on a three-year term of supervised release following her release from custody. One of the conditions of Mata's supervised release is that she is required to participate in a mental-health program "as deemed necessary by the Probation Department." Mata did not object to this condition before the district court. On appeal, she contends that it was unconstitutional for the district court to delegate to the Probation Department the determination of whether she would have to participate in a mental-health program.

## II.

We review the district court's interpretation and application of the Sentencing Guidelines de novo.[4] A district court's "'[f]actual findings regarding sentencing factors are entitled to considerable deference and will be reversed only if they are clearly erroneous.'"[5] A factual finding is clearly erroneous if, after reviewing the entire evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."[6] A factual finding is not clearly erroneous so long as it is "'plausible in light of the record as a

---

[4] *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010).

[5] *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)). The district court must find that the government has proven any fact necessary to support a sentence enhancement by a preponderance of the evidence. *See United States v. Conner*, 537 F.3d 480, 491-92 (5th Cir. 2008) (citing U.S. SENTENCING GUIDELINES MANUAL § 6A1.3 cmt.).

[6] *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005) (citation and internal quotation marks omitted).

whole.'"[7]    A court of appeals may not reverse a district court's finding of fact based only on its belief that, "'had it been sitting as the trier of fact, it would have weighed the evidence differently'" and reached a different conclusion.[8]

## A.

The district court did not err by applying the reckless-endangerment enhancement under § 2L1.1(b)(6) of the Sentencing Guidelines. Whether Mata's conduct in transporting Guerrero-Cruz qualifies as "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" as required by § 2L1.1(b)(6) is a question of law, so our review is de novo.[9]    But we review only for clear error the underlying factual findings on which the district court based its legal conclusion.[10]

The application of § 2L1.1(b)(6) "requires a fact-specific inquiry"[11] because the reckless-endangerment enhancement is intended to apply to "a wide variety of conduct."[12]    "[A] single, bright-line test is not necessarily appropriate for a guideline that must be applied to [the] wide variety of factual settings" in which defendants transport aliens for financial gain.[13]    Accordingly, we have articulated a nonexclusive list of five factors to guide district courts in their application of § 2L1.1(b)(6): "the availability of oxygen, exposure to temperature

---

[7] *Williams*, 610 F.3d at 292 (quoting *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010)).

[8] *United States v. Charon*, 442 F.3d 881, 891 (5th Cir.) (quoting *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005)), *cert. denied*, 549 U.S. 915 (2006).

[9] *See United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005).

[10] *See id.*

[11] *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006).

[12] *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.1 cmt. 5 (2009).

[13] *Zuniga-Amezquita*, 468 F.3d at 889.

extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs."[14] Only the fourth and fifth of those factors are pertinent to this case.

Out of this fact-bound area of the law a few guiding principles have emerged.  As to the fourth factor, we have affirmed the enhancement in situations in which it would have been difficult for the alien to extricate herself from the vehicle in the event of an emergency because the alien was jammed into a compartment[15] or wedged into a tight space.[16]  We have also upheld the imposition of the enhancement where the aliens, who were being transported in a van, were completely surrounded by boxes "practically piled up to the top of the van" that were too big for the aliens to easily move.[17]  As to the fifth factor, the enhancement is proper only if the aliens would be in greater danger if an accident occurred than "an ordinary passenger not wearing a seatbelt in a moving vehicle."[18]  As a result, the mere fact that an alien is transported in a portion of the car that is not designed to hold passengers is not, without more, sufficient to support the enhancement.[19]

---

[14]  *Id.*

[15]  *See, e.g., United States v. Rodriguez-Mesa*, 443 F.3d 397, 403 (5th Cir. 2006).

[16]  *See, e.g., United States v. Garza*, 587 F.3d 304, 309 (5th Cir. 2009).

[17]  *Zuniga-Amezquita*, 468 F.3d at 890.

[18]  *Id.* at 890.

[19]  *See, e.g., Solis-Garcia*, 420 F.3d at 516 (holding that a defendant who transported four aliens in the cargo area of a minivan did not warrant the § 2L1.1(b)(6) enhancement because the dangers "associated with riding in the cargo area . . . are generally the same dangers that arise from an individual not wearing a seatbelt in a moving vehicle"); *see also United States v. Dixon*, 201 F.3d 1223, 1233 (9th Cir. 2000) (reversing the district court's application of the reckless-endangerment enhancement where the defendant had transported aliens in the trunk area of his hatchback car on the ground that "a person hiding in a hatchback area easily could extricate himself by pushing up the lightweight, flimsy hatchback cover").

In this case, the district court made two findings in support of its decision to apply the reckless-endangerment enhancement. First, the court found that the stroller under which the Guerrero-Cruz was hiding would impede his ability to exit the vehicle quickly because it was not lightweight, "clunky," and "not that easy to move out of the way." Second, the court found that it was "likely" and "highly foreseeable" that, in the event of an accident, the stroller "would cause more damage" and "the injuries [to Guerrero-Cruz] would be much more severe than if he were just in the back covered with blankets." Had we been sitting as the trier of fact, we might have concluded that the stroller would not have significantly impeded the alien's ability to exit the vehicle.[20] But the district-court's contrary finding—assisted as it was by its viewing of photos of the stroller and other items covering Guerrero-Cruz, photos which have not been made part of the record on appeal—is certainly plausible in light of the record as a whole. So too is its finding that the presence of the stroller in the car created a substantial risk that Guerrero-Cruz would suffer serious injury in the event of an accident. We thus conclude that these findings of fact were not clearly erroneous. As a consequence, the district court did not err by enhancing Mata's sentence for reckless endangerment under § 2L1.1(b)(6).[21]

---

[20] *Cf. United States v. McKinley*, 272 F. App'x 412, 413 (5th Cir. 2008) (per curiam) (unpublished) (vacating the defendant's sentence after concluding that the defendant's decision to hide four adult, male aliens under a king-size mattress did not create a danger of suffocation, reasoning that "[a] 15-pound mattress does not create a *substantial* risk of death or serious bodily injury to four adult men" (citations, internal quotation marks, and brackets omitted)). Although this unpublished decision does not bind us, *see* 5TH CIR. R. 47.5.4, we find its reasoning persuasive.

[21] We conclude with a warning to defense counsel. An appellate lawyer has an ethical duty to not misrepresent, mischaracterize, or misquote the record in her filings with the Court. *See* SUPREME COURT OF TEXAS STANDARDS FOR APPELLATE CONDUCT, Lawyers' Duties to the Court 3 (1999). At sentencing, the district court ended its preliminary discussion of the reckless-endangerment enhancement by stating, "I'll hear anything else that [the defendant] wanted to say, but I don't see that under the circumstances here the objection is one that the Court could sustain." In her brief, Mata averred that the district court "asked for more information because 'the objection [was] one the Court could sustain.'" *See* Brief for Appellant at 10. Appellant's counsel thus represented to the Court that the district court said at

B.

Nor did the district court err by applying the use-of-a-minor enhancement under § 3B1.4 of the Guidelines.  A defendant who "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense" is subject to a two-level sentence enhancement under § 3B1.4.  A defendant uses or attempts to use a minor within the meaning of § 3B1.4 if the defendant directs, commands, encourages, intimidates, counsels, trains, procures, recruits, or solicits the minor.[22]  At issue in this appeal is the portion of § 3B1.4 that authorizes the enhancement if the defendant uses a minor to "assist in avoiding detection of . . . the offense."  The determination of whether Mata used or attempted to use a minor to assist in avoiding detection within the meaning of § 3B1.4 is a conclusion of law that we review de novo, while any findings of fact made in support of that determination we review for clear error.[23]

We have suggested, but never held in a published opinion, that a defendant who makes a decision to bring a minor along during the commission of a previously planned crime as a diversionary tactic or in an effort to reduce suspicion is subject to having her sentence enhanced under § 3B1.4.[24]  We so hold today, consistent with our previous unpublished decisions in *United States*

---

sentencing exactly the opposite of what the district court actually said.  This was a blatant misrepresentation of the record.  The Court admonishes defense counsel to take care in her future filings to abide by her duty of candor.

[22] *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.4 cmt. 1 (2009).

[23] *See United States v. Molina*, 469 F.3d 408, 413 (5th Cir. 2006)

[24] *See id.* at 415 (noting that this court had previously upheld a § 3B1.4 enhancement where "the defendant brought minor children on a drug run to avoid detection by law enforcement") (citing *United States v. Gutierrez*, 251 F.3d 156, 2001 WL 300644, at *1 (5th Cir. Feb 28, 2001) (per curiam) (unpublished table decision), *cert. denied*, 534 U.S. 823 (2001)).

*v. Zertuche,*[25] *United States v. Farias,*[26] *United States v. Gutierrez,*[27] and *United States v. Ibarra-Sandoval.*[28]    This holding takes heed of the general rule that the defendant must take some affirmative action to involve the minor in the offense[29] and that "[a]bsent other evidence, the mere presence of a minor" at the scene of a crime "is insufficient to support the application of § 3B1.4."[30]    When a defendant's crime is previously planned—when, for example, she leaves the house knowing she is on her way to smuggle drugs, or intending to pick up a person who is unlawfully present in the United States—the act of bringing the child along instead of leaving the child behind is an affirmative act that involves

---

[25]    228 F. App'x 462, 463 (5th Cir) (per curiam) ("In light of the undisputed evidence that a co-defendant was to smuggle a quantity of cocaine hidden in an infant carrier seat and that the co-defendant's infant child was brought to the bus station, we conclude that the district court did not clearly err in finding that [the § 3B1.4] enhancement was warranted."), *cert. denied*, 552 U.S. 921 (2007).

[26]    112 F. App'x 374, 374 (5th Cir. 2004) (per curiam) ("Farias admitted that he was instructed to take his children on drug-smuggling trips to avoid detection by law enforcement, and his children accompanied on two such trips. He failed to provide any other plausible explanation for taking his children with him on those trips. The district court did not clearly err [in applying § 3B1.4].").

[27]    251 F.3d 156, 2001 WL 300644, at *1 ("The district court could infer that Gutierrez had orchestrated the presence of his children in an attempt to give the appearance of a family traveling together and thereby avoid detection by law enforcement. Such an inclusion of children is a 'use' of minors for purposes of § 3B1.4.").

[28]    216 F.3d 1079, 2000 WL 729068, at *1 (5th Cir. May 8, 2000) (unpublished table decision) ("[T]he guideline is broad enough to encompass circumstances where adult criminals benefit from a minor's passive participation in the criminal scheme. . . . [W]e conclude that the district court was entitled to infer that Ibarra and Torres transported the small child in the vehicle as part of a strategy calculated to reduce the chance that law enforcement agents would delay their trip to make a careful inspection of the vehicle for drugs. We conclude that this use of a child as a diversionary tactic to transport drugs undetected across the border is a 'use' of a minor under § 3B1.4."), *cert. denied*, 531 U.S. 939 (2000).

[29]    *Cf. United States v. Alarcon,* 261 F.3d 416, 422 (5th Cir. 2001), *cert. denied*, 534 U.S. 1099 (2002). *Alarcon* reviewed the sufficiency of the evidence in support of a conviction for the use of a minor in avoiding detection in violation of 21 U.S.C. § 861(a)(2), *id.*, but we have previously found *Alarcon* to be "instructive as to what conduct constitutes use of a minor" under § 3B1.4, *see Molina*, 469 F.3d at 415 n.6.

[30]    *Molina*, 469 F.3d at 415 (citations and internal quotation marks omitted).

the minor in the offense. Intentionally using a minor as a decoy is "use" of a minor under § 3B1.4.[31]

This is not to say that every defendant who brings a minor child along while smuggling drugs or aliens is subject to having her sentence enhanced under § 3B1.4. The district court should consider additional circumstantial evidence to determine whether the defendant used the minor to avoid detection.[32] For example, in *Molina*, we held that the district court erred by imposing the § 3B1.4 enhancement where there was no evidence that the defendant in a drug-conspiracy case "believed that his seventeen-year-old girlfriend's presence in the vehicle during the drug run would assist in avoiding detection" and there was a plausible alternate explanation for the girlfriend's presence in the vehicle.[33] The § 3B1.4 enhancement also was unwarranted where the defendant's minor son was in the car with her when she was arrested while attempting to smuggle drugs across the border but "the defendant (who was living in the United States) planned the crime on the spur of the moment while she was already in Mexico with her son for a family party."[34] But where additional circumstantial evidence tends to confirm that the defendant brought the minor along as a decoy and to avoid detection, the § 3B1.4 enhancement is warranted.[35]

---

[31] *Accord United States v. Preciado*, 506 F.3d 808, 810 (9th Cir. 2007) (per curiam), *cert. denied*, 128 S. Ct. 2980 (2008).

[32] *See, e.g.*, *United States v. Caldwell*, 448 F.3d 287, 292 (5th Cir. 2006) (explaining that "direct evidence [that] conclusively establishes" the factual basis for a sentence enhancement is not required because "the sentencing court is permitted to make common-sense inferences from the circumstantial evidence").

[33] *Molina*, 469 F.3d at 415.

[34] *Preciado*, 506 F.3d at 811 (describing *United States v. Jimenez*, 300 F.3d 1166, 1168 (9th Cir. 2002)).

[35] *See, e.g.*, *United States v. Castro-Hernandez*, 258 F.3d 1057, 1060-61 (9th Cir. 2001) (affirming application of the § 3B1.4 enhancement where at least four pieces of circumstantial evidence supported the conclusion that the defendant had used his minor son for purposes of

In this case, the district court found that Mata had chosen to bring her friend and the three minor children with her to give the appearance that the group was traveling as a family unit and to reduce the likelihood of coming under suspicion for being engaged in criminal conduct. More specifically, the district court found that Mata chose to bring her children along because it would help make the presence of the stroller in the trunk seem more plausible. The court also found that Mata could have avoided bringing her children with her by leaving them under the care of her friend, who, like Mata, lived in San Antonio. A preponderance of the evidence supported each of these findings. Taken together, these findings provide ample support for the district court's conclusion that Mata attempted to use the presence of the three minors in her car to assist in avoiding detection of her offense. The district court did not err by enhancing Mata's sentence under § 3B1.4.

## III.

Finally, Mata contends that the district court committed plain error by impermissibly delegating to a probation officer its judicial authority to determine whether Mata should be required to participate in a mental-health program as a condition of her supervised release. After Mata filed her brief, a panel of this Court held in *United States v. Bishop* that a district judge's delegation of its authority in this manner is not, in light of this Court's precedent, plainly erroneous.[36] *Bishop* forecloses Mata's position.

## IV.

For the reasons discussed above, the judgment of the district court is AFFIRMED.

---

avoiding detection of the fact that he was smuggling drugs), *cert. denied*, 534 U.S. 1167 (2002).

[36] 603 F.3d 279, 280-82 (5th Cir.), *cert. filed*, No. 10-5298 (July 6, 2010).