# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 2, 2011

No. 10-41151

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

AARON C. ROBINSON,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Aaron C. Robinson appeals his sentence after he pleaded guilty to one count of using a cellular telephone to willfully threaten to unlawfully damage or destroy a building by means of explosive, under 18 U.S.C. § 844(e). Robinson contends that the district court erred by imposing a two-level sentencing enhancement for using a minor "to commit the offense or assist in avoiding detection of, or apprehension for, the offense" when Robinson used a minor to purchase a prepaid cellular phone, with which Robinson made bomb threats the following day. U.S.S.G. § 3B1.4 (2009). Despite the novel use of this enhancement, we find no error in the district court's application of § 3B1.4 of the Sentencing Guidelines, and therefore we affirm.

No. 10-41151

## I. FACTUAL AND PROCEDURAL BACKGROUND

Aaron C. Robinson was scheduled to attend a child-support hearing in Port Lavaca, Texas, on June 30, 2009. According to the factual basis supporting the plea, he feared that because he was unable to pay $762 in child support, the court would put him in jail. He decided that instead of attending the hearing, he would call in a bomb threat and then drive back to Louisiana, where he was living.

On June 29, 2009, Robinson drove with his girlfriend and children from Louisiana to Angleton, Texas. Upon arriving, he asked his mother to take the children to his ex-wife's residence in Port Lavaca. Robinson also asked his then-fourteen-year-old stepsister, M.R., to purchase a prepaid cellular telephone with money he gave her. He told M.R. that he would use the phone to call his children and ex-wife. M.R. purchased a TracFone Wireless prepaid mobile phone at a Walmart in Port Lavaca. Robinson then contacted M.R. and asked her to leave the phone on the back porch of his mother's house where he would pick it up, which she did.

On the morning of June 30, Robinson and his girlfriend picked up the prepaid phone and began driving back to Louisiana. Outside of Houston, Robinson used the phone to make two bomb threats against the Calhoun County Courthouse in Port Lavaca where his child-support hearing was scheduled to be held. He placed one call to the Houston 911 Call Center, and the other directly to the Calhoun County Courthouse. Based on these threats, officials closed the courthouse for the day while a bomb-disposal unit searched the building. Robinson threw the phone out the window as he drove back to Louisiana.

Investigators traced the bomb threats to calls made from a Tracfone Wireless prepaid phone purchased at a Port Lavaca Walmart on June 29, 2009. Using surveillance videos from the store, they observed a young female and male making the purchase, and they made efforts to locate the two by contacting local

2

No. 10-41151

schools and the juvenile probation department.  A July 3, 2009 tip from a Crime Stoppers hotline identified the individuals on the security tape as fourteen-year-old M.R. and seventeen-year-old J. M., both of whom lived in Angleton. The caller also identified Robinson as the person who had called in the bomb threats. Authorities arrested Robinson thereafter.

On April 28, 2010, the United States brought a two-count indictment against Robinson.  Both counts charged Robinson with using a cellular phone to willfully threaten to damage or destroy a building by means of an explosive, under 18 U.S.C. § 844(e), one count for his call to the Houston Police Department 911 Call Center, and the other count for his call to the Calhoun County Courthouse.  On August 3, 2010, Robinson entered into an agreement to plead guilty to Count One of the Indictment.  Under the agreement, the Government recommended that the district court dismiss Count Two of the Indictment and agreed to recommend that Robinson receive maximum credit for acceptance of responsibility, and a sentence within the applicable guideline range.

Robinson's Presentence Report ("PSR") assigned a base offense level of twelve.  *See* U.S.S.G. § 2A6.1(a)(1).  The probation officer increased his base offense level by four levels because the offense resulted in a substantial disruption of "public, governmental, or business functions or services."  *Id.* § 2A6.1(b)(4)(A).  He also increased Robinson's base offense level by two additional levels because Robinson used a minor to commit the offense or assist in avoiding detection.  *See id.* § 3B1.4.  The probation officer based this enhancement on Robinson having his minor stepsister purchase the prepaid mobile phone that Robinson later used to make the bomb threats.  After a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1, the PSR recommended a total offense level of fifteen.  Robinson's total offense level, combined with a criminal history category of VI, resulted in a sentencing guidelines range of forty-one to fifty-one months in prison.

3

No. 10-41151

Robinson objected to the PSR's two-level enhancement for use of a minor. He argued that he did not "intentionally and purposefully include[ ] the juvenile in the commission of a criminal offense or in some significant way direct[ ] or otherwise control[ ] the minor." Robinson contended that there was no evidence that the minor knew that the telephone was going to be used to commit a crime and there was no evidence that he intended to use the telephone to commit a crime at the time his stepsister purchased it.

At his sentencing hearing, Robinson renewed his objection to the § 3B1.4 enhancement. He argued that the short time span between the time his stepsister purchased the telephone and the time he made the bomb threats was insufficient to justify the enhancement. Robinson also asserted that this fact pattern was distinct from scenarios in which a court typically applies the enhancement. While noting that it was a "close call," the district court overruled the objection because it appeared that Robinson asked the minor to purchase the phone so that it would not be traced to him. The district court then concluded that a sentence within the guidelines range was appropriate and sentenced him to forty-one months in prison and a three-year term of supervised release. Robinson filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Mata*, 624 F.3d 170, 173 (5th Cir. 2010) (per curiam) (citations omitted). We give "considerable deference" to the district court's factual findings concerning sentencing factors, and we will only reverse for clear error. *Id.* (citations omitted). A factual finding is clearly erroneous only "if, after reviewing the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005) (internal quotation marks omitted)).

No. 10-41151

## III. DISCUSSION

Robinson argues that the court erred in applying the enhancement for several reasons. First, he claims that there is no evidence from which to infer that he intended to make the bomb threats or use the phone to do so at the time he asked the minor to purchase the phone. Second, he contends that there are no cases dealing with a similar fact pattern and courts usually apply the enhancement in situations involving transporting aliens or drugs. Third, he argues that the enhancement was improper because using a minor to buy the phone provided no greater advantage in avoiding detection than using an adult.

U.S.S.G. § 3B1.4 requires a two-point upward departure "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." The commentary to the rule states that "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* cmt. n.1. The district court noted that there was sufficient evidence of Robinson's intent at the time he asked M.R. to purchase the phone. Based on this, the court found that although applying this enhancement was a "close call," and that Robinson could have chosen to use an adult, he nonetheless decided to ask his minor stepsister to purchase the phone to avoid detection. Therefore, the enhancement was proper.

Robinson first argues that there is insufficient evidence in the record that he intended to make bomb threats or to use the phone to make bomb threats at the time he asked his stepsister to purchase it. He claims that the only evidence in the record concerning his intent to purchase the phone is that he intended to use it to keep in contact with his ex-wife and children. Robinson therefore contends that without any evidence in the record indicating *when* he decided to make the bomb threats using the phone, the Government failed to show that he had the requisite intent to use a minor to avoid detection of the crime.

5

No. 10-41151

The party seeking an adjustment to the sentence level during sentencing—here, the Government—"must establish the factual predicate justifying the adjustment." *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990) (citing *United States v. Mueller*, 902 F.2d 336, 347 (5th Cir. 1990)). To meet this burden, the Government must prove "by a preponderance of the relevant and sufficiently reliable evidence the facts necessary to support the adjustment." *Id.* (citing *United States v. Mourning*, 914 F.2d 699, 706 (5th Cir. 1990)). Further, "direct evidence [that] conclusively establishes" intent is not necessary to support the enhancement because "the sentencing court is permitted to make common-sense inferences from the circumstantial evidence." *United States v. Caldwell*, 448 F.3d 287, 292 (5th Cir. 2006).

Robinson mistakes the preponderance-of-evidence requirement for a requirement that the Government prove the enhancement by direct evidence. While the record may lack direct evidence of his intent to make the bomb threats at the time he asked M.R. to purchase the phone, there is substantial circumstantial evidence of Robinson's intent. The PSR establishes that Robinson did the following: (1) decided at some point before the child-support hearing not to attend because he was afraid the court would jail him for failure to pay $762; (2) directed M.R. to purchase a prepaid phone the day before he ultimately placed the bomb threats on that phone, and gave her money to do so; (3) contacted M.R. and asked her to leave the phone on the back porch that night; (4) retrieved the phone and the next morning placed the two bomb threats; and (5) disposed of the phone by throwing it out of the car window as he drove back to Louisiana.

The district court could properly infer from these facts that Robinson had another person purchase the phone to avoid appearing on store surveillance videos. Further, because Robinson directed M.R. to purchase the phone only hours before he made the threats, the timing supports an inference that he had

6

the requisite intent at the time he made the request.  Finally, Robinson's decision to purchase a prepaid phone that could not be tracked directly to him and to dispose of that phone after the call supports the inference that he asked M.R. to purchase the phone with the specific intent to avoid detection.  These are reasonable inferences that the district court was entitled to make based on the circumstantial evidence in the record.  Therefore, the district court did not clearly err in finding the record sufficient to support Robinson's intent when he asked M.R. to purchase the phone.

Second, Robinson argues that the district court erred in applying the enhancement because of a lack of factually similar precedent.  Robinson cites to several cases involving the use of a minor in transporting drugs or illegal aliens.  He correctly notes the general rule that has emerged from these cases: "[T]he defendant must take some affirmative action to involve the minor in the offense and [ ] '[a]bsent other evidence, the mere presence of a minor' at the scene of a crime 'is insufficient to support the application of § 3B1.4.'"  *Mata*, 624 F.3d at 176 (quoting *United States v. Molina*, 469 F.3d 408, 415 (5th Cir. 2006)).  We have also noted that in dealing with scenarios where the minor is *merely present* during the commission of an offense, "[t]he district court should consider additional circumstantial evidence to determine whether the defendant used the minor to avoid detection."  *Id.*

While Robinson is correct that this factual scenario is distinct from those in which § 3B1.4 is typically applied, it does not follow that its application here is incorrect.  Nothing in the text of § 3B1.4 requires the minor's presence *during* the commission of the crime; only that the defendant "used or attempted to use" the minor to "assist in avoiding detection."  This case's differences from drug-running and alien-smuggling cases where the minor is merely present in a vehicle actually strengthen the case for the enhancement.  Unlike in those cases, there is no dispute here that M.R. took an affirmative action on behalf of

Robinson.  The Government did not seek to apply the enhancement because of the passive presence of the minor during the commission of a crime, but because Robinson directed her to take a specific action.  Because there is sufficient evidence from which to infer that he directed her to purchase the prepaid phone in order to avoid detection, the cases cited by Robinson are inapplicable.

Robinson's final argument against the enhancement is also without merit. He contends that although he asked M.R. to purchase the phone, if his motive were merely to avoid detection he could have just as easily asked an adult to purchase the phone.  While Robinson is correct that he *could* have asked an adult to purchase the phone rather than a minor, he did not.  Nothing in the text of § 3B1.4 supports the argument that the use of the minor must be tied to her status as a minor.  Although in some cases the minor might be used as a decoy in a way that an adult could not, *see Mata*, 624 F.3d at 177 (upholding the enhancement where the minor's presence in the car was meant to "give the appearance that the group was traveling as a family unit and to reduce the likelihood of coming under suspicion for being engaged in criminal conduct"), this does not *a fortiori* mean that the use of the minor must *always* be specific to her minor status.

Here, the Government presented sufficient circumstantial evidence for the district court to conclude that (1) Robinson intended to use the phone to make bomb threats at the time he ordered M.R. to purchase the phone; (2) by using M.R. to purchase a prepaid phone, he attempted to avoid detection; and (3) M.R.'s purchase of the phone at Robinson's direction was a sufficient "use" of a minor to satisfy §3B1.4.

## IV. CONCLUSION

Therefore, because the district court did not err in its decision to give Robinson a two-level enhancement under §3B1.4, we affirm his sentence.

AFFIRMED.