GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority opinion as to the sufficiency of evidence for Juarez-Gomez’s conviction and the enhancement for firearm possession.[1] I dissent from the disposition of the remaining sentencing enhancement challenges: use of a minor, U.S.S.G. § 3B1.4, and the majority’s harmless error analysis.
I.
I would reverse the district court’s enhancement of Juarez-Gomez’s sentence for the use of a minor. The Sentencing Guidelines impose a two-level enhancement where a defendant “used or attempted to use” a minor in committing the offense of conviction or in avoiding detection thereof. U.S.S.G. § 3B1.4. Congress defined “use” in a manner that encompasses a host of actions ranging from direction to training to solicitation. U.S.S.G. § 3B1.4 cmt. n.l. Based on this broad definition, the majority concludes that the enhancement is appropriate based on the affirmative acts of (1) directing A.G. to pay rent and (2) “bringing A.G. into the trailer to live instead of leaving A.G. in another location.” Maj. Op. at 381. Whether a defendant “uses” a minor under the Guidelines is a legal conclusion reviewed de novo. United States v. Feaster, 43 Fed.Appx. 628, 632 (4th Cir.2002) (citing United States v. McClain, 252 F.3d 1279, 1284 (11th Cir.2001)); United States v. Powell, 732 F.3d 361, 380 (5th Cir.2013).
As elastic as the Guidelines definition may be, I find that the majority’s conclusion stretches “use” beyond its limits. Absent other evidence, a minor’s mere presence does not warrant enhancement under § 3B1.4. See, e.g., United States v. Molina, 469 F.3d 408, 414 (5th Cir.2006). The majority concludes that there was more than mere presence, such that the use of a minor enhancement is appropriate as to Juarez-Gomez. I find that to the extent that there is something more than presence, those acts do not fall within the Guidelines definition. United States v. *387 Mata, which the majority opinion cites, provides a clear line of demarcation between that case and the facts now before us.[2] In Mata, the court explained that presence could sufficiently constitute an affirmative act where the minor’s presence served as a decoy or was otherwise instrumental in evading detection of criminal activity. 624 F.3d 170, 176 (5th Cir.2010). Discovering such connection “requires a purpose driven inquiry.” United States v. Powell, 732 F.3d 361, 380 (5th Cir.2013). Juarez-Gomez’s actions cited by the majority fall short of being acts intended to “commit the offense or assist in avoiding detection of, or apprehension for, the offense.” U.S.S.G. § 3B1.4.
A.
On this record, paying rent for the trailer was neither criminal activity nor a means of avoiding detection. Without any evidence that submitting the monthly rent for the place where he and his father lived is a criminal act, I do not see how A.G.’s act of paying the rent amounts to committing the offense of conspiracy to distribute. Were that the case, then all parents who ask their children to drop off a rent payment for a residence that is used to engage in criminal activity would be subject to a two-level enhancement. Furthermore, nothing in the record so much as hints at how A.G. paying the rent, rather than Juarez-Gomez, somehow kept the landlord or anyone else from discovering criminal activity in the trailer.[3] Without a showing that paying rent for A.G.’s residence was criminal or linked to evasion from authorities, merely paying rent cannot amount to an affirmative act involving the minor in the offense of conviction.
In much the same way, I also disagree that the enhancement applies on the ground that Juarez-Gomez brought A.G. to live in the trailer rather than leave A.G. elsewhere. The majority’s reliance on Mata for this conclusion is misplaced. In Mata, the court explicitly found a connection between the minors’ presence and a plan for evading detection. See Mata, 624 F.3d at 177 (the presence of the minors in the car was intended to “give the appearance that the group was traveling as a family unit and to reduce the likelihood of coming under suspicion for being engaged in criminal conduct”). The court cited evidence demonstrating that the defendant, who planned to use her children to avoid detection from law enforcement, “could have avoided bringing her children with her by leaving them under the care of her friend who, like Mata, lived in San Anto *388 nio.” Mata, 624 F.3d at 177. Here, there is no proof that A.G.’s presence at the trailer served as an explanation or cover for criminal activity. See Molina, 469 F.3d at 413-14 (enhancement inappropriate where no evidence in drug conspiracy conviction could show that the defendant “believed that his seventeen-year-old girlfriend’s presence in the vehicle during the drug run would assist in avoiding detection”). Furthermore, no evidence demonstrates that Juarez-Gomez could have left his son to live with someone, whether in the same city or elsewhere.
The Fifth Circuit was careful to limit its decision in order to ensure that § 3B1.4 was not applied to “every defendant who brings a minor child along while [engaging in criminal conduct] is subject to” the § 3B1.4 enhancement. Mata, 624 F.3d at 176. By contrast, the majority opinion lays the very trap that the Fifth Circuit refused to set. The facts in this case do not show that A.G. paying rent or living with Juarez-Gomez was criminal or calculated to elude authorities. By applying § 3B1.4 regardless, the majority expands the enhancement beyond its language.
B.
A.G.’s presence at drug deals with Pedro and Erasto involve some additional facts, yet not enough for me to agree that the use of a minor enhancement was appropriate for Juarez-Gomez. The confidential witness explained that A.G. was present at multiple drug deals with both Pedro and Erasto, and that another deal where only Pedro and A.G. were present involved A.G. assisting Pedro in cooking cocaine base. No facts demonstrate that Juarez-Gomez instructed A.G. to join Pedro and Erasto, or that he instructed A.G. to engage in criminal activity, e.g. cooking cocaine.[4]
To the extent that the majority implicitly relies upon A.G.’s acts in connection with Pedro and Erasto’s activities, see Maj. Op. at 380-81, enhancement could only be proper if it was reasonably foreseeable that Pedro and Erasto would involve A.G. in criminal activity. The majority declined to take a position on this issue, having otherwise found sufficient proof of an affirmative act within the definition of § 3B1.4. See Maj. Op. at 380 n. 7. I address this issue only to make two brief points. First, with respect to those deals involving both Erasto and Pedro, no evidence shows that A.G.’s presence in any way assisted the commission of the drug deals or diminished the likelihood of detecting criminal activity.[5] Cf. Mata, 624 F.3d at 176-77. Second, the deal where A.G. assisted Pedro in cooking cocaine base undoubtedly presents a use of minor within the Guidelines definition. However, I would conclude that Pedro’s conduct, even if reasonably foreseeable, cannot trigger the use of a minor enhancement as to Juarez-Gomez. See United States v. Pojilenko, 416 F.3d 243 (3d Cir.2005) (coconspirator’s reasonably foreseeable use of a minor cannot apply to other conspiracy members for the purpose of applying § 3B1.4). I believe the principles recognized in our United States v. Moore decision apply equally to § 3B1.4. See 29 F.3d 175 (4th Cir.1994). Moore looked to the structure and defendant-specific language of role in the offense enhancements under *389 chapter three and held that the Guidelines require a finding that the defendant, not any co-conspirators, engage in the proscribed behavior. Id.; see also Pojilenko, 416 F.3d at 248-249 (applying Moore’s reasoning to § 3B1.4).
For these reasons, I would find that neither the conduct of Juarez-Gomez nor that of his co-conspirators supports a § 3B1.4 enhancement for Juarez-Gomez.
II.
I further disagree that, even assuming the district court committed error in applying the leadership enhancement to Juarez-Gomez and the use of a minor enhancement to Erasto, the errors were harmless.
In order to avoid remanding a sentence that we would otherwise affirm despite a procedural error, we conduct an “assumed error harmlessness inquiry” consisting of two steps. United States v. Hargrove, 701 F.3d 156, 162-63 (4th Cir.2012); see also United States v. Savillon-Matute, 636 F.3d 119, 123-24 (4th Cir.2011). First, this Court must have the “knowledge that the district court would have reached the same result even if it had decided the [Guidelines issue the other way.” Savillon-Matute, 636 F.3d at 123. Second, this Court must determine that the imposed sentence would be reasonable even after resolving the procedural error in the defendant’s favor. Id. Only where the Court is “certain” of these two factors will an error be deemed harmless. United States v. Gomez, 690 F.3d 194, 203 (4th Cir.2012).
I am not certain that we have the requisite knowledge that the district court would have reached the same result absent any error in calculating the Guidelines range. To be sure, the district court stated that it would have imposed the same sentence even if the Guidelines calculations were erroneous. This explicit statement presents a different circumstance from Savillon-Matute, Hargrove, and our recent decision in United States v. Montes-Flores, 736 F.3d 357 (4th Cir.2013), where the district courts made no such statement. Even so, I do not believe that a simple statement that the court would have imposed the same sentence is sufficient, at least where the imposed sentence exceeds what would have been the Guidelines range absent the procedural error.[6] The district court’s explanation fails to distinguish its reasons for a within-Guidelines sentence from those for an above-Guidelines sentence, and thus fails to provide the necessary certainty to know it would have imposed the same sentence. See United States v. Zabielski, 711 F.3d 381, 389 (3d Cir.2013) (“Though probative of harmless error, [a statement that the court would have imposed the same sentence] will not always suffice to show that an error in calculating the Guidelines range is harmless; indeed, a district court still must explain its reasons for imposing the sentence under either Guidelines range.”); United States v. Abbas, 560 F.3d 660, 667 (7th Cir.2009) (Guidelines error harmless because district court’s alternative sentence provided “detailed explanation of the basis for the parallel result”); see also *390 United States v. Peña-Hermosillo, 522 F.3d 1108, 1117 (10th cir.2008) (“Indeed, it is hard for us to imagine a case where it would be procedurally reasonable for a district court to announce that the same sentence would apply even if. correct guidelines calculations are so substantially different, without cogent explanation.”).
In reviewing above-Guidelines sentences, without the harmless error analysis, we would require the district court to “explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate.” Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The majority is content with considering harmless what would otherwise require a separate and particular explanation for a variance. To allow what is, as a matter of analytical fiction, an above-Guidelines sentence without the explanation normally required for such sentences fails to comport with the need “to allow for meaningful appellate review and to promote the perception of fair justice.” Id. at 50, 128 S.Ct. 586. Nothing could be less meaningful than labeling an error harmless so long as a district court states it would impose the same sentence in the event it erred, without also “thoroughly] explaining]” why it would do so. Zabielski, 711 F.3d at 389. The exception has now swallowed the rule.
Our good colleague, who previously authored Savillon-Matute, recognized that harmlessness is difficult to prove where a district court calculates a guidelines range and sentences a defendant within that range, for “it is logical to assume that if a district court is content to sentence within whatever the guidelines range happens to be, then a lower range would lead to a sentence within that lower range.” Montes-Flores, 736 F.3d at 372 (Shedd, J., dissenting). It would seem equally logical that if the ranges for Erasto and Juarez-Gomez were erroneously calculated, the district court would have imposed a sentence within the new ranges just as it imposed sentences within the erroneous ranges. We cannot be certain that it would have varied upward without some appropriate and stated justification for doing so.
Within-Guidelines sentences, the scenario Judge Shedd referenced in MontesFlores, appear in the majority of convictions. Undoubtedly, some cases will also involve reprehensible behavior and criminal history that may warrant punishment beyond what the Guidelines recommend. I do not doubt a district court’s power to impose such sentences. I only call for what would be required if we were to apply Gall and consider procedural reasonableness: a “justification for an above-Guidelines sentence.” Montes-Flores, 736 F.3d at 371 (emphasis added). If the standard for harmlessness truly is “a high bar,” id., we should not be so forgiving as to find harmlessness without the explanation that would be otherwise required, see, e.g., United States v. King, 673 F.3d 274, 283 (4th Cir.2012) (appellate review must ensure that district courts “adequately explain ... any deviation from the Guidelines range”). Only with the assistance of such an explanation or justification may we then conduct a meaningful review.
The absence of such justification for the alternative sentence cannot be more at odds with the perception of fair justice. The majority perceives the district court as specifically citing, in a “separate and particular explanation” for its alternative sentence, Maj. Op. at 383, the § 3553(a) factors. In reality, that “separate and particular explanation” was a single sentence, in which the district court simply referenced our harmless error precedent and its § 3553(a) analysis, which was devoid of any indication that an upward vari *391 anee was necessary to impose an appropriate sentence. A court must provide more than just the § 3553(a) factors as a reason for varying upward, as those are required for every sentencing. Montes-Flores, 736 F.3d at 371. Absent a stated reason for varying upward where the court was otherwise satisfied to impose a sentence in the middle of the Guidelines range, I do not find that the district court’s § 3553(a) review would justify an upward variance. See Peña-Hermosillo, 522 F.3d at 1117 (alternative rationale inadequately explained where district court’s “cursory” reasoning made “vague” reference to § 3553(a) factors). While district courts need not employ any particular verbiage to justify an above-Guidelines sentence, the imposition of an alternative sentence demands “a thorough explanation” that “can help us identify when an erroneous Guidelines calculation had no effect on the final sentencing determination.” Zabielski, 711 F.3d at 389. Without this explanation, we should be “inclined to suspect that the district court did not genuinely consider the correct guidelines calculation in reacting the alternative rationale.” Peña-Hermosillo, 522 F.3d at 1117. To accept the perfunctory reasoning offered here for an alternative, variant sentence essentially values form over the substance Gall requires.
The evolution of our harmless error jurisprudence has reached the point where any procedural error may be ignored simply because the district court has asked us to ignore it. In other words, so long as the court announces, without any explanation as to why, that it would impose the same sentence, the court may err with respect to any number of enhancements or calculations. More to the point, a defendant may be forced to suffer the court’s errors without a chance at meaningful review. Gall is essentially an academic exercise in this circuit now, never to be put to practical use if district courts follow our encouragement to announce alternative, variant sentences.[7] If the majority wishes to abdicate its responsibility to meaningfully review sentences for procedural error, the least it can do is acknowledge that it has placed Gall in mothballs, available only to review those sentences where a district court fails to cover its mistakes with a few magic words.
The majority upholds the challenged sentences because they are accompanied by a cursory statement that essentially renders procedural mistakes irrelevant. This is perhaps the most troubling aspect of the majority’s conclusion: the combination of the district court’s statement and a one-sentence argument at the end of the government’s brief is a sufficient basis for this Court’s refusal to review the propriety of a sentencing enhancement. As an initial matter, this approach deprives us of the opportunity to address the applicability of sentencing enhancements. More importantly, the practical effect of this conclusion is the creation of a mechanism where *392 by district courts may impose one-size-fits-all sentences that appellate courts would refrain from meaningfully reviewing. Courts could apply any number of enhancements to justify reaching the sentence they desire, then use this Court’s harmless error jurisprudence to prompt us to uphold a sentence that otherwise lacks a sufficient justification. The notion of consistent sentences for similarly situated defendants disappears where errors regarding conduct and enhancements — errors which would make defendants dissimilar— are swept under the rug of harmlessness.
For these reasons, I remain unconvinced we have the requisite knowledge for harmless error where, as here, the district court merely announces an alternative variant sentence, equal to the initial within-Guidelines sentence, without a thorough explanation demonstrating that an error in calculating the sentencing range had no bearing on the imposed sentence. This would justify what would be an upward deviation from a properly calculated Guidelines range. Therefore, I respectfully dissent from the majority’s harmless error analysis.[8]

. Two other cases referenced in the majority opinion are also distinguishable. In United States v. Taber, the fact that the defendant drove the minor to the robbery location was viewed in connection with the fact that the minor broke into a building and stole firearms, a patently affirmative criminal act, and that the defendant acted as a lookout while the minor stole weapons. 497 F.3d 1177, 1181 (11th Cir.2007). The record does not demonstrate the same confluence of criminal activity involving Juarez-Gomez and A.G.
United States v. Voegtlin noted that enhancement may be proper where a minor is asked to accompany a defendant who commits a crime. 437 F.3d 741, 747 (8th Cir. 2006). However, the case upon which Voegtlin relied for this rule involved a minor asked to accompany the defendant to a- crime because the defendant would not have had the courage to commit the crime without the minor present. See United States v. Paine, 407 F.3d 958, 965 (8th Cir.2005). Again, nothing in this record crafts an analogous situation whereby Juarez-Gomez needed A.G. in order to sell drugs.

. The landlord stated that he collected rent from A.G. from time to time. This does not suggest that A.G. exclusively, as opposed to intermittently, paid the rent. Thus, there is no inference that A.G. paying rent was a method for Juarez-Gomez to avoid being known by the landlord or anyone else.

. At oral argument, the government averred that having A.G. in the trailer where individuals were storing and cooking drugs equates to training and encouragement. Taken to its logical conclusion, presence at any criminal activity would be construed as encouraging a minor to engage in the same activity, rendering “mere presence” a mere theory.

. Although the majority does not reach the issue, I would find § 3B1.4 inapplicable to Erasto for this same reason.

. If we assume the court erred in applying the use of a minor enhancement to Erasto, then his 180-month sentence exceeds what would be a Guidelines range of 135-168 months.
If we likewise assume the court erred in applying both the use of a minor and the leadership enhancements to Juarez-Gomez, his 390-month sentence also exceeds what would be a Guidelines range of 262-327 months. This would result from a four-level reduction — two levels for each enhancement. If we only assume error as to the leadership enhancement, since the majority affirmed the use of a minor enhancement, then the two-level reduction would result in a range of 320-405 months.

. While this Court has reviewed alternative sentences for more than twenty years, we recently began encouraging the imposition of alternative sentences in light of uncertainties eventually resolved by United States v. Booker. See United States v. Hammoud, 378 F.3d 426 (4th Cir.2004), vacated 543 U.S. 1097, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005); see also Montes-Flores, 736 F.3d at 374 & n.4 (Shedd, J., dissenting). Alternative sentences serve a purpose in extraordinary circumstances of constitutional importance, such as that time period where we questioned whether the Guidelines were mandatory or advisory. See Hammoud, 378 F.3d at 426; see also United States v. Alvarado Perez, 609 F.3d 609, 619 (4th Cir.2010) (noting the “limited context” in which this Court encouraged alternate sentences). However, absent legal uncertainties of the magnitude present in the time between Blakely v. Washington and Booker, I would hesitate to encourage alternative sentences.

. I would further find that the application of the remaining enhancements were erroneous and remand for resentencing. I would find that the use of a minor enhancement does not apply to Erasto because the evidence does not show anything more than A.G.’s mere presence at drug deals involving Erasto. See ante at 388 & n. 4. I would also find that the leadership enhancement inapplicable to Juarez-Gomez because A.G. paying rent for the place A.G. lives is not a criminal activity which could show that Juarez-Gomez directed or supervised an act by A.G. that was part of the conspiracy to distribute.